JUDGE FURMAN

FEB 0 1 2013

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

13 CV 0753

---

TERRY KLEIN derivatively on behalf of
IRON MOUNTAIN INCORPORATED,

    Plaintiff,

           v.

DAVIS SELECTED ADVISERS, L.P., DAVIS NEW
YORK VENTURE FUND, CHRISTOPHER C.
DAVIS, and IRON MOUNTAIN INCORPORATED,

    Defendants.

Civil Action No.

*(Jury Trial Demanded)*

---

## COMPLAINT

Plaintiff, Terry Klein ("Klein"), by her attorneys, Kornstein, Veisz, Wexler &
Pollard LLP and Ostrager Chong Flaherty & Broitman P.C., complaining of defendants,
alleges upon information and belief as to all paragraphs except paragraph 1, as follows:

1.    Plaintiff Klein is a New York resident who is the owner of Common Stock
of Iron Mountain Incorporated ("Iron Mountain" or the "Company").

2.    Iron Mountain, a nominal defendant herein, is a Delaware corporation
with its principal place of business located at 745 Atlantic Avenue, Boston,
Massachusetts 02111.

3.    Defendant Davis Selected Advisers, L.P. ("Davis Advisors") is a Colorado
limited partnership with its principal place of business at 2949 East Elvira Road, Suite
101, Tucson, Arizona 85756. Davis Advisors provides investment management services
to registered investment companies (including the Davis Funds, Selected Funds, and

Clipper Fund), unregistered investment companies, offshore funds, and private accounts ("Davis Managed Accounts"). Davis Advisors also provides investment management services to Davis New York Venture Fund, Inc., a registered investment company, organized in Maryland with offices c/o Davis Advisors. Davis New York Venture Fund, Inc. has four series or portfolios, including defendant Davis New York Venture Fund (the "NY Venture Fund").

4.      Defendant NY Venture Fund is a Maryland corporation, with its principal place of business c/o Davis Advisors, 2949 East Elvira Road, Suite 101, Tucson, Arizona 85756. Davis Advisors acts as a portfolio manager for all of the Managed Accounts, including the NY Venture Fund.

5       Defendant Christopher C. Davis ("Davis") is an individual with a business address at 620 Fifth Avenue, New York, New York 10020. Davis is one of one of two senior portfolio managers of Davis Advisors.

## JURISDICTION AND VENUE

6.      This action is brought derivatively on behalf of Iron Mountain pursuant to Section 16(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78p ("§ 16(b)"), to obtain disgorgement of profits obtained by defendants in violation of that statute. Jurisdiction of this court and venue in this district are proper pursuant to 15 U.S.C. § 78(a)(a).

## THE GOVERNING LAW

7.      Section 16(b) of the Exchange Act provides that if a person, while beneficially owning more than 10 percent of a class of equity securities of an issuer,

purchases and sells, or sells and purchases shares of any equity security of such issuer
within a period of less than six months, any profits arising from those transactions are
recoverable by the issuer or by a shareholder suing derivatively on its behalf.

8.      Under Rule 16a-1(a)(1) promulgated under the Exchange Act, where two
or more persons "act as a partnership, limited partnership, syndicate, or other group for
the purpose of acquiring, holding or disposing of securities of an issuer" as set forth in
Section 13(d)(3) of the Exchange Act ("§13(d)"), such persons are deemed to be a
"group" for purposes of determining §16(b) liability.  Under SEC Rule 16a-1, the shares
held by persons in such a group are aggregated to determine whether the group has a
greater than 10% beneficial ownership in the issuing corporation.  If the aggregate
number of shares beneficially owned by the group exceeds 10%, each member of the
group is deemed to be a greater than 10% beneficial owner and is liable to disgorge
profits arising from transactions by such group member effected within a six-month
period.

9.      Defendants Davis Advisors, NY Venture Fund, the Managed Accounts
and Davis constitute a group (collectively the "Davis Group Members" or "Davis
Group") for purposes of determining beneficial ownership under §§13(d)(3) and 16(b) of
the Exchange Act. The Davis Group was, at relevant times, a greater than 10% beneficial
owner of the Company's Common Stock and garnered short-swing profits disgorgeable to
the Company in the transactions hereinafter set forth.  As all purchases and sales for each
of the Davis Group Members were directed by Davis Advisors, a group was formed and
operative within the meaning of §13(d)(3) of the Exchange Act, for the purpose of
acquiring, holding and disposing of shares of Common Stock of Iron Mountain.

10.     SEC Rule 16a-1(a)(1)(the "Rule")  provides an exemption from beneficial ownership (solely for purposes of determining whether a person is a more than 10% owner under the statute) for institutions or persons that hold securities for "the benefit of third parties or in customer or fiduciary accounts in the ordinary course of business. However, this exemption is available only <u>as long as such shares are acquired by such institutions or persons without the purpose or effect of changing or influencing control of the issuer</u> . . . ." (*emphasis added*)  As shown below, Davis Advisors is not entitled to the exemption for its purchases and beneficial ownership of Iron Mountain securities because beginning at least as early as  February 24, 2011, it formed the intent and purpose to support a proxy contest by Elliott Associates LP and Elliot International L.P. (collectively, "Elliott") which sought to change control of the Company.

## DAVIS GROUP'S BENEFICIAL OWNERSHIP

11.     On or about March 25, 2011, defendants Davis Advisors and the NY Venture Fund filed a Schedule 13D ("Schedule 13D") with the Securities and Exchange Commission reporting that as of March 23, 2011, the Davis Group had a collective beneficial ownership of 42,231,819 shares of Iron Mountain Common Stock, representing <u>21.1 percent</u> of all outstanding shares of the Company's stock.

12.     On or about August 16, 2011, defendants Davis Advisors and NY Venture Fund filed an Amendment No. 1 to Schedule 13D ("Amendment No. 1") with the Securities and Exchange Commission reporting that as of August 16, 2011, the Davis Group had a collective beneficial ownership of 40,828,922 shares of Iron Mountain Common Stock, representing <u>20.1 percent</u> of all outstanding shares of the Company's stock.

13.     The Schedule 13D discloses aggregate purchases by the NY Venture Fund of 895,342 shares of Iron Mountain Common Stock between February 24, 2011 and March 23, 2011.  Amendment No. 1 discloses that the NY Venture Fund made aggregate sales of 358,909 shares of Iron Mountain Common Stock between June 16, 2011 and August 16, 2011.  The foregoing purchases and sales of Iron Mountain Common Stock, which are within the six month period of the statute, may be matched and yield short-swing profits in the amount of at least $3.2 million which is subject to disgorgement to the Company.

### The Attempt To Influence or
### Change Control of Iron Mountain

14.     As described above, the registered investor investment advisor exemption provided in Rule 16a-1(a)(1)(v) is not available to Davis Advisors because its shares were not held for third parties in the ordinary course of business without the purpose or effect of changing or influencing control of the Company.  The chronology of events relating to the proxy contest launched by Elliott and supported by Davis Advisors evidences Davis Advisors' activist intent.

15.     On February 11, 2011, Davis Advisors filed a Schedule 13G/A with the SEC disclosing aggregate beneficial ownership of 38.9 million shares as of December 31, 2010, representing 19.5% of the outstanding shares.  As of that time, the Davis Group was the Company's largest shareholder and Iron Mountain common stock represented one of the Davis Group's largest holdings.

16.     In or about July, 2010, Elliott began accumulating Iron Mountain stock. In an SEC Form 13F filed on February 14, 2011 for the period ending December 31, 2010, Elliott reported that it owned 1.6 million shares of Iron Mountain common stock.

In its prior Form 13F filed November 15, 2010, for the period ending September 30, 2010, Elliott disclosed that it owned only 1 million Iron Mountain shares.  Nevertheless, despite its relatively small stake, Elliott campaigned vigorously to persuade Iron Mountain management to change its corporate structure.

17.     In a Form 8-K filing on March 7, 2011, the Company candidly disclosed its dealings with Elliott.  "Since July 2010, members of Iron Mountain's senior management team and the Company's advisors have held numerous discussions with Elliott and its advisors primarily to review and consider a suggestion by Elliott regarding converting the Company to a real estate investment trust, or REIT."  The culmination of Elliott's activities was Elliott's Notice of Nomination of Candidates for Election to the Board of Directors and Stockholder Proposal by which Elliott proposed to nominate four directors to the Company's Board.

18.     Elliott's activities ramped up thereafter.  On March 10, 2011, Elliott filed a SEC Schedule 14A in which Elliott stated that it intended to file a proxy statement to solicit proxies.  The March 10 filing includes a PowerPoint presentation stating that the Company's share price had the potential to increase to between $52 and $77 per share and laid out how this valuation could be achieved.

19.     On March 10, 2011, Elliott filed additional soliciting materials with the SEC including a letter to the Company dated March 9, 2011.  In the letter, Elliott called for a strategic review of the Company's capital allocation and operational efficiency and submitted a slate of four nominees and stated that it would commence a proxy contest to seek support for its nominees.

20.     On March 22, 2011, in an interview given to The Wall Street Journal, Ken Charles Feinberg ("Feinberg"), co-portfolio manager of Davis supported the Elliott bid by stating that "Our firm feels that current management would benefit from having a few new faces on the board who will help guide them in capital allocation decisions and ultimately exploring the opportunity of becoming a REIT".  Feinberg further stated that Davis agreed with Elliott that the Company's foray into a digital storage business, as well as its international operations, haven't justified the returns and that Davis supported downsizing the Company's digital business and exploring a sale.

21.     On March 23, 2011, the Company adopted a shareholder rights plan (poison pill) in order to "reduce the likelihood that any person or group would gain control of the company by open market accumulation or other coercive takeover tactics without paying a control premium."  The adoption of the poison pill followed unusual trading activity in the options market on March 22, when 220,000 call options changed hands, equivalent in volume to more than one-tenth of the shares outstanding.

22.     On March 23, 2011, Feinberg issued a public statement in which he described the Company's adoption of the poison pill as "heinous corporate governance" Feinberg further stated in interviews with the press that while the Company's management had raised margins in its core U.S. business, both management and the Board had done a poor job of investing overseas and in new technology.  Feinberg further stated that "[s]ometimes companies are so focused on their business they benefit from some new ideas, particularly on capital allocation."

23.     On March 23, 2011, Elliott filed additional soliciting materials with the SEC which included a letter dated March 23, 2011 that Elliott had sent to the Company.

In the letter, Elliott stated: "We are extremely disappointed by Iron Mountain's reaction to Davis Advisors' public support for the four independent nominees put forward by Elliott. We believe it is a disturbing development when a company facing no apparent takeover threat responds to **a call for change from its largest shareholder** by adopting a Poison Pill." (emphasis added).

24.     On March 25, 2011, Elliott filed its preliminary proxy statement with the SEC.

25.     On April 1, 2011, Davis filed a Schedule 13D with the SEC disclosing aggregate beneficial ownership of 42.2 million shares as of March 23, 2011, representing 21.1% of the outstanding shares; this represented an increase in Davis' beneficial ownership of roughly 3.3 million shares from its beneficial ownership as of December 31, 2010. In its Schedule 13D, Davis disclosed that it had announced its support for the four nominees proposed by Elliott. The Schedule 13D further discloses that "Davis Advisors may have **additional conversations with the Issuer and/or third parties** regarding opportunities to maximize the Issuer's value including any of the actions or transactions enumerated in clauses (a) through (j) of Item 4" (emphasis added).

26.     On April 4, 2011, Elliott filed additional soliciting materials with the SEC which included a letter dated April 4, 2011 that Elliott had sent to the Company's Board. In the letter, Elliott again made prominent mention of Davis' support, stating "On March 23, thirteen days ago, Iron Mountain installed a Shareholder Rights Plan (so-called "Poison Pill") immediately following public comments by Davis Advisors, IRM's largest shareholder and one of the world's most renowned mutual funds, indicating support for Elliott's recommended Board nominees. When asked to comment on the Poison Pill by

the *Financial Times*, this same shareholder referred to it as 'heinous corporate governance'. We strongly agree."

27.     On April 11, 2011, Elliott filed additional soliciting materials with the SEC, which included a PowerPoint presentation highlighting the following dates, events and share prices:

- 3/4/11 – share price $25.21;

- 3/7/11 – share price $25.66; Company discloses Elliott's nomination of nominees to Board;

- 3/10/11 – share price $27.66; Elliott files proxy soliciting materials;

- 3/22/11 – share price $29.52; Davis discloses its support for Elliott;

- 3/23/11 – share price $30.90; Company adopted poison pill; and

- 4/1/11 – share price $31.53; Davis files its Schedule 13D in which it discloses an increase in Davis' beneficial ownership of roughly 3.3 million shares from its beneficial ownership as of December 31, 2010, which increase in beneficial ownership occurred while Elliott was having discussions with the Company and, presumably, Davis.

28.     On April 14, 2011, the Company filed a Form 8-K in which it disclosed that on April 12, 2011, the Board and Robert T. Brennan, the Company's President and Chief Executive Officer, mutually agreed that Mr. Brennan would step down as President and CEO. On the same day, Mr. Brennan also resigned from the Board.

29.     In a Form 8-K filed with the SEC on April 19, 2011, the Company disclosed that it had entered into a settlement agreement with Elliott. Under the terms of the agreement, the Company agreed to nominate for election at its 2011 annual meeting Allan Z. Loren, one of the nominees in Elliott's terminated proxy contest. In addition,

the Company agreed to fill an additional Board seat vacancy by appointing a director to

be mutually agreed upon by the Company, Elliott and Davis. Through its participation

with Elliott, Davis thus obtained a contractual right to designate a director of the

Company. The Company also agreed to form a Special Committee to evaluate various

strategic matters, including conversion to a REIT. The Special Committee would include

Mr. Loren and the Davis designated director. The Company further committed to make

payouts to stockholders of $2.2 billion through 2013 through share repurchases and

dividends. In essence, the Company agreed to implement the plans outlined by Elliott

and supported by Davis.

30.     In the Company's press release announcing the settlement, the Company

includes the following statement of Ken Charles Feinberg of Davis: "We strongly support

the Board of Directors' plan to increase shareholder value with the actions announced

today  We applaud the Board for being responsive to shareholders and commend them for

being exemplars of excellent corporate governance."

31.     On August 17, 2011, roughly four months after the proxy contest had been

settled and Davis had succeeded in securing Board representation and causing the

Company to implement dramatic changes in its operations and strategy, Davis filed a

Schedule 13D/A with the SEC disclosing aggregate beneficial ownership of 40.8 million

shares as of August 16, 2011, representing 20.1% of the outstanding shares; this

represented a decrease in Davis' beneficial ownership of roughly 1.4 million shares from

its beneficial ownership as of March 23, 2011.

32.     On December 6, 2011, Davis filed a Schedule 13D/A with the SEC

disclosing that Davis had continued to substantially reduce its ownership of Company

shares. The Schedule 13D/A disclosed aggregate beneficial ownership of 35.0 million shares as of December 5, 2011, representing 18.8% of the outstanding shares; this represented a decrease in Davis' beneficial ownership of roughly 7.3 million shares from its beneficial ownership as of March 23, 2011.

33.    On December 22, 2011, Davis filed a Schedule 13D/A with the SEC disclosing that Davis had continued to substantially reduce its ownership of Company shares. The Schedule 13D/A disclosed aggregate beneficial ownership of 32.9 million shares as of December 21, 2011, representing 17.7% of the outstanding shares; this represented a decrease in Davis' beneficial ownership of roughly 9.4 million shares from its beneficial ownership as of March 23, 2011.

34.    On February 2, 2012, Davis filed a Schedule 13D/A with the SEC disclosing that Davis had continued to substantially reduce its ownership of Company shares. The Schedule 13D/A disclosed aggregate beneficial ownership of 31.0 million shares as of February 2, 2012, representing 16.7% of the outstanding shares; this represented a decrease in Davis' beneficial ownership of roughly 11.3 million shares from its beneficial ownership as of March 23, 2011.

35.    The facts described above evidence coordinated activity by Elliott and Davis that extended at least as early as February 2011 and perhaps as far back as the summer of 2010. Elliott's negotiation with the Company, despite its small ownership interest, evidences the overt and/or implicit support of Davis for Elliott's offer to influence control of Iron Mountain. Davis' support, which was revealed in a public relations campaign beginning March 22, 2011, plainly can be traced back to the SEC filings by both Elliott and Davis on February 14, 2011.

36.    As a matter of law, Davis is not entitled to the exemption provided by Rule 16a-1(a)(1) )and the Davis Group is liable to disgorge its profits in the trading of the Company's common stock.

## AS AND FOR A CLAIM FOR RELIEF
## AGAINST DAVIS GROUP MEMBERS

37.    Plaintiff repeats and realleges each of the allegations contained in paragraphs 1 through 36 as if fully set forth herein.

38.    Defendant NY Venture Fund effected purchases and sales of Iron Mountain Common Stock between February 24, 2011 and August 16, 2011 resulting in profits disgorgeable under Section 16(b) of the Exchange Act, in the amount of $3.2 million which must be returned to Iron Mountain.

39.    In addition, other Group Members whose identities are not known but are under Davis Advisors' common management may be liable for additional profits to be disgorged in an unknown amount.

## ALLEGATION AS TO DEMAND

40.    On May 1, 2012, plaintiff made demand upon Iron Mountain to commence this lawsuit.  The Company has not pursued the claims asserted herein.


**WHEREFORE**, plaintiff demands judgment on behalf of Iron Mountain Incorporated against defendants, as described above, plus attorneys' fees, interest and such other and further relief as to the Court may seem just and proper.

12

Dated: New York, New York
       February 1, 2013

                    Yours, etc.

                    KORNSTEIN VEISZ WEXLER
                      & POLLARD, LLP
                    Paul D. Wexler, Counsel

                    757 Third Avenue
                    New York, New York 10017
                    (212) 418-8692

                    OSTRAGER CHONG FLAHERTY
                      & BROITMAN P.C.

                    By: _____
                      Glenn F. Ostrager

                    570 Lexington Avenue
                    New York, New York 10022
                    (212) 681-0600

                    Attorneys for Plaintiff